UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Plaintiff, ) | |
| v. ) | Case No. 1:21-cv-643 |
| JOSHUA LOUIS RUPP, ) | JURY TRIAL |
| Defendant. ) | |

## COMPLAINT

The United States Securities and Exchange Commission ("Commission" or "SEC") alleges as follows for its complaint against defendant Joshua Louis Rupp ("Defendant" or "Rupp"):

## SUMMARY

1. From January 2018 through July 2019, Rupp engaged in a fraudulent investment scheme that included misstatements, false documents and misappropriation of investor funds. Rupp raised over $2.2 million from about 20 investors to trade securities on their behalf. Rupp told a number of investors their money would be pooled with other investors' money.

2. Rupp solicited investments by means of various false statements, including that he was a licensed securities professional, investors' principal was protected from losses, and he would generate profits for investors. Rupp provided to investors fake documents purporting to show he was associated with a licensed broker-dealer. Rupp also provided investors false account statements and false trading data to make it appear that his trading on their behalf was generating positive returns.

3. In reality, Rupp was not licensed in the securities industry or affiliated with any brokerage firm, his securities trading resulted in significant losses, and he misappropriated and misused hundreds of thousands of dollars of investor funds. Investors lost most of their money, including retirement funds, through Rupp's fraud.

4. By engaging in the conduct described in this Complaint, Rupp violated the antifraud provisions of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and the broker registration provision of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)] and unless restrained and enjoined will engage in future violations of these provisions.

5. The Commission seeks an order enjoining Rupp from future violations of these provisions, requiring him to disgorge his ill-gotten gains plus prejudgment interest, and imposing a monetary penalty.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], and Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa].

7. Venue is proper in the Western District of Michigan pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)] because many of the acts, transactions, practices and courses of business constituting the violations occurred in this district. During the relevant timeframe, Rupp resided in Allendale and Holland, Michigan, and he conducted business from an office located in Grand Rapids, Michigan. Rupp offered and sold securities to investors in this district, and also made material misrepresentations in this district to investors in connection with the sale of those securities.

8. In connection with the conduct alleged in this Complaint, Rupp directly or indirectly made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## DEFENDANT

9. **Joshua Louis Rupp** age 37, is a resident of Michigan.  Rupp previously worked in construction, and he has a Michigan Builders license.  Public records do not show Rupp being registered with the Commission as a broker or dealer or associated with any registered broker-dealer or investment adviser.

10. Rupp filed for bankruptcy protection in 2012 and again in 2016.  Rupp is incarcerated in the Central Michigan Correctional Facility in connection with unrelated criminal charges.

## RELATED ENTITY

11. **IMS LTD LLC ("IMS")** is a Michigan limited liability company formed by Rupp in August 2018.  At all relevant times, IMS was managed and controlled by Rupp.  IMS was not and is not registered with the Commission in any capacity.  Rupp opened a brokerage account in IMS's name in which he deposited and pooled some of the investor funds and traded securities until July 2019.

## FACTS

A. **Rupp Solicited Investments From Investors**

12. From January 2018 through July 2019, Rupp obtained over $2.2 million from about 20 investors, most of whom lost all of their money.  The investors resided in Michigan, Florida and abroad.  Rupp met investors, who generally lacked significant investment experience, through his construction work and referrals from existing investors.  Rupp typically

told investors that he would pool their money with money from other investors and that he would trade on the investors' behalf.

13. Rupp deposited investor funds into a brokerage account in his name and, beginning in August 2018, also into a brokerage account in the name of his company, IMS.

14. Rupp also obtained access to several investors' individual retirement and brokerage accounts and traded securities in these accounts. Two of these investors had previously invested with Rupp through the pooled accounts, beginning in mid-2018, and Rupp had falsely represented to these investors that their prior investments had been profitable. In mid-2019, Rupp told these investors that he would use their retirement funds to trade using an "iron condor option trading" strategy, which Rupp described to one of them as his "golden goose."

15. Rupp transferred funds from some of the individual accounts to his and IMS's brokerage accounts where investor funds were pooled.

16. Rupp engaged in frequent trading in stocks and options with investors' money in his brokerage account, IMS's account and individual investors' accounts, and such trading resulted in significant losses.

17. Rupp's investment scheme also involved securities in the form of investment contracts. Investors provided Rupp with investments of money, which were pooled in brokerage accounts, and investors relied on Rupp to generate profits from trading in the pooled accounts.

18. Rupp misused and misappropriated investor funds for personal gain.

B. **Rupp Solicited Investments by Means of Various False Statements**

    i. **False Statements About Securities Credentials**

19. Rupp solicited investments by falsely stating he was affiliated with a brokerage firm and was a licensed securities professional.

20. To a number of investors, Rupp falsely held himself and IMS out as being affiliated with Brokerage Firm A, a broker-dealer registered with the Commission and the Financial Industry Regulatory Authority ("FINRA"). Rupp told these investors that he worked with or under the supervision of an uncle who was a licensed broker at Brokerage Firm A.

21. For example, on or about December 7, 2018, Rupp told one prospective investor that he worked under the supervision of his uncle at Brokerage Firm A. That same day, this person made her first $10,000 investment with Rupp and subsequently made additional investments.

22. Rupp provided some investors fake documents purportedly showing he was associated with Brokerage Firm A. The documents contained the Brokerage Firm A name and logo alongside Rupp's name and the name of his company, IMS. For example, in about May 2019, Rupp asked an investor to fill out certain forms, including a "Client Registration Form" that featured the name and logo of Brokerage Firm A next to the name of Rupp's company, IMS. Shortly thereafter, this person invested $1,000 with IMS.

23. Rupp also falsely represented he was a licensed securities professional. Rupp had some investors sign a "Broker Agreement Disclosure" that described Rupp as a "broker" and a "stock broker." Rupp signed such agreements with investors on multiple occasions, including in January 2018 and May 2019.

24. In addition, in about July 2018, Rupp showed some investors a binder of documents, which included a fake securities license in his or his uncle's name. Among documents subsequently found among Rupp's possessions was a fake securities license in Rupp's name purportedly issued by the State of Michigan.

25. One of the documents given to certain investors, in about May 2019, stated that "[a]ssociation with [Brokerage Firm A] [and] IMS [] is limited to Professional Traders" and "[a]ll [Brokerage Firm A] Traders must have successfully completed the Series 57 Securities Trader Qualification Examination." Rupp signed the document as a "money manager."

26. In reality, Rupp did not have any affiliation with Brokerage Firm A, either directly or through an uncle. Rupp was not authorized to use the Brokerage Firm A name or logo. He never completed the Series 57 Securities Trader Representative Exam or any other examination administered by FINRA. Rupp and IMS were never registered with the Commission, FINRA or a state to provide securities-related advice in any capacity, including as a broker or as an investment adviser. Rupp also did not work with an uncle who had a securities license. The state securities license in Rupp's name was forged.

    **ii.    False Statements About Safety of the Investments**

27. Rupp told some investors that the principal of their investment would be safe.

28. Rupp told at least two investors that his uncle backed the investment and guaranteed the principal amounts invested against losses. Rupp told some other investors that the amounts invested were protected by insurance, including insurance issued by the Securities Investor Protection Corporation ("SIPC"). He told other investors that there was no or virtually no risk to the amounts invested thanks to "hedging" or an "algorithm."

29. These statements were false because no one backed Rupp's investments, and the funds invested were not protected from Rupp's trading losses or his fraud by hedging, SIPC or any other insurance.

### iii. False Statements About Profits

30. Rupp solicited some investors with assurances that he would generate profits for them.

31. For instance, on or about June 24, 2019, Rupp told one investor that he would grow the investor's money just as he had done for the investor's relative.

32. Rupp advised another investor to sell certain securities so that the investor could invest those proceeds with Rupp, assuring the investor by text message on May 25, 2018 that he could "outperform on those by about 10-15% at least." Three days later, Rupp also texted this same investor stating, "I love making money for people. The market is endless possibilities when u know how to hedge right and risk mange [sic] correctly. I been blessed with a platform to be able to make it happen."

33. These statements were false or misleading because Rupp could not guarantee profits for investors and, in fact, his track record included large trading losses.

### iv. False Statements About Investment Performance

34. Rupp also made false statements to investors that his purchases and sales of securities on their behalf were profitable.

35. Rupp provided to several investors false account statements and false data, including through apps that Rupp had installed on investors' phones. This information falsely showed investments increasing in value, when the values were actually decreasing.

36. For example, Rupp provided one investor a false account statement covering June 12 through August 15, 2018, which showed the investor's account balance increasing almost 115% year-to-date and outperforming the average return on the S&P by 109%. To the contrary,

the actual, relevant brokerage account statements showed year-to-date trading losses as of the end of June, July, and August 2018.

37. In another example, Rupp provided an investor a false account statement, which showed the investor's account balance increasing to $316,019 as of July 8, 2019, and a total account yield of nearly 70%. In fact, the actual, relevant brokerage account statements for the IMS and Rupp accounts where this investor's funds were deposited showed account values of only $643 and $26,196, respectively, as of the end of June 2019, and account values of $0.30 and $15, respectively, as of the end of July 2019, as well as significant trading losses.

38. In yet another example, an app that Rupp installed on an investor's phone showed only gains (never losses) being posted to the investor's account on a regular basis between December 2018 and July 2019, despite Rupp consistently losing money in trading during this time period.

### v. False Statements About Compensation

39. Rupp made false statements to some investors about his compensation.

40. Rupp provided some investors a document, including in about May 2019, which stated he would be compensated through profits generated by the investment. He told one investor that he was compensated by charging a five percent commission on investment gains.

41. Contrary to these representations, Rupp routinely misappropriated investor funds, using such funds for various personal expenditures and cash withdrawals even though Rupp's trading was not profitable.

42. Rupp also told an investor that he was making money as a result of having his own money in the investment. In reality, Rupp did not contribute his own money into the investment.

### C. Rupp Lost Investor Funds Through Trading and Misuse

43. Beginning in January 2018, Rupp deposited investor funds into a brokerage account in his name. Beginning in August 2018, he also deposited investor funds into a brokerage account in IMS's name. Rupp was the only signatory and authorized trader on the IMS brokerage account. Rupp also had access to other brokerage accounts that had been opened by some of the investors, and Rupp ultimately transferred most of the funds from these accounts to the brokerage accounts in his and IMS's name, where investor funds were pooled.

44. Rupp engaged in frequent securities trading in his, IMS's, and certain investors' brokerage accounts. Rupp used investor funds to buy and sell stocks listed on the New York Stock Exchange and NASDAQ and trade in options, including stock options and S&P 500 index options.

45. Rupp's securities trading resulted in over $1.4 million in losses.

46. Rupp also diverted to himself a substantial portion of the invested funds, which was contrary to his representations to investors that their money would be safe and used for trading. For instance, Rupp routinely used cash held in the brokerage accounts in his and IMS's names to make purchases from retailers including BestBuy, Home Depot, Meijer, Walmart and Disney Resorts. For example, on July 24, 2018, Rupp used his brokerage account to make a $2,503 payment to Walmart. On December 10, 2018, Rupp used IMS's brokerage account to make a $1,786 payment to Disney Resorts.

47. Rupp also frequently withdrew cash from his and IMS's brokerage accounts. For example, on June 10, 2019, Rupp withdrew approximately $1,000 from his brokerage account and another approximately $1,000 from IMS's brokerage account. In all, Rupp misappropriated and misused more than $600,000 of investor funds.

48.	In Ponzi-like manner, Rupp also used funds invested by certain investors to pay other investors.  For instance, in July 2018, Rupp deposited checks from three investors, totaling $100,000, into his brokerage account.  Early the following month, Rupp used some of these funds to pay $84,463 to a different investor who made a withdrawal request.  Rupp also made a handful of other, smaller payments to investors.  In all, more than $100,000 of investor funds were used to make payments to other investors.

## COUNT I

**Fraud in the Offer or Sale of Securities**
**Violations of Securities Act Section 17(a)**
**[15 U.S.C. § 77q(a)]**

49.	Paragraphs 1 through 48 are realleged and incorporated by reference herein.

50.	Rupp, by engaging in the conduct described above, directly or indirectly, in connection with the offer or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange:

   a. knowingly or recklessly employed devices, schemes, or artifices to defraud;

   b. knowingly, recklessly or negligently obtained money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   c. knowingly, recklessly or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

51.     By engaging in the conduct described above, Rupp violated, and unless restrained and enjoined will in the future violate, Sections 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2), and (3)].

## COUNT II

**Fraud in Connection with the Purchase or Sale of Securities
Violations of Exchange Act Section 10(b) and Rule 10b-5
[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]**

52.     Paragraphs 1 through 48 are realleged and incorporated by reference herein.

53.     Rupp, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

   a. employed devices, schemes, or artifices to defraud;

   b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

   c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

54.     By engaging in the conduct described above, Rupp violated, and unless restrained and enjoined will in the future violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b), and (c)].

## COUNT III

**Acting as an Unregistered Broker
Violations of Exchange Act Section 15(a) [15 U.S.C. § 78o(a)]**

55.     Paragraphs 1 through 48 are realleged and incorporated by reference herein.

56. Rupp, directly or indirectly, by the use of the mails or the means or instrumentalities of interstate commerce, while acting as or associated with a broker or dealer, effected transactions in, or induced or attempted to induce the purchase or sale of securities, while he was not registered with the Commission as a broker or dealer or when he was not associated with an entity registered with the Commission as a broker-dealer.

57. By engaging in the conduct described above, Rupp violated, and unless restrained and enjoined will in the future violate Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court:

A. Find that Rupp committed the violations charged and alleged herein;

B. Permanently enjoin Rupp from violating, directly or indirectly, Section 17(a) of the Securities Act; Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5; and Section 15(a) of the Exchange Act;

C. Order Rupp to disgorge the ill-gotten gains obtained as a result of the conduct alleged in this Complaint, with prejudgment interest;

D. Order Rupp to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

E. Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

  F. Grant an Order for any other relief this Court deems appropriate.

Dated:  July 28, 2021           Respectfully submitted,

                 <u>s/ Derek S. Bentsen</u>
                 Derek S. Bentsen
                 Division of Enforcement
                 Securities and Exchange Commission
                 100 F Street, NE
                 Washington, DC 20549
                 Tel:  202-551-6426
                 Email:  bentsend@sec.gov

Of Counsel:
Lisa Weinstein Deitch
California Bar No. 137492
Gosia Spangenberg
District of Columbia Bar No. 983403
Division of Enforcement
Securities and Exchange Commission